1 | William Turley (SBN 122408)
2 | Email: bturley@turleylawfirm.com
  | David Mara (SBN 230498)
3 | Email: dmara@turleylawfirm.com
  | THE TURLEY LAW FIRM, APLC
4 | 625 Broadway, Suite 635
  | San Diego, CA 92101
5 | Telephone: +1 619 234 2833
  | Facsimile: +1 619 234 4048
6 |
7 | Attorneys for Plaintiff
  | JAVIER ZAMORA
8 |

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAVIER ZAMORA on behalf of himself, others similarly situated, and the general public,<br><br>        Plaintiffs,<br><br>  vs.<br><br>RYDER INTEGRATED LOGISTICS, INC., and DOES 1 through 100,<br><br>        Defendants. | Case No.: 13-cv-02679-CAB-BGS<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**[Declaration of William Turley and Attachments, Proposed Order, and Joint Stipulation of Settlement and Release and Attachments are filed concurrently herewith]**<br><br>**<u>Hearing</u>**<br>December 18, 2014<br>Courtroom: 4C<br>Judge: Hon. Cathy Ann Bencivengo |

– 1 –

# TABLE OF CONTENTS

*Page No.*

I.   INTRODUCTION .................................................................... 2

II.  FACTUAL/PROCEDURAL BACKGROUND ................................ 2

    A.   Procedural Background ................................................. 3

    B.   Discovery, Investigation, Claims and Defenses
        Associated with Ryder's Piece-Rate Pay Structures ......... 5

    C.   Prior Settled Cases - *"Carranza/Rodriguez Class Action
        Settlement"* - and Its Effect on the Claims Period in this
        Matter ....................................................................... 8

    D.   Mediation with Mark Rudy .......................................... 10

    E.   Summary of Settlement Terms and Provisions ............... 10

    F.   Class Reaction to the Settlement – 79% of the Net
        Settlement Amount Being Claimed and the Average and
        High Settlement Shares Being $1,406 and $4,955,
        Respectively ............................................................... 13

    G.   This Settlement Does Not Include Workweeks Where
        Ryder Drivers Worked Exclusively on an Hourly Basis ... 14

III. DISCUSSION ..................................................................... 15

    A.   The Proposed Settlement Meets the Standards Governing
        Final Approval ........................................................... 15

        1.   The Settlement Was Reached as a Result of Arm's-
            Length Negotiations ........................................... 16

        2.   *In re Bluetooth Headset Products Liability Litigation*
            (9th Cir. 2011) 654 F.3d 935, Factors Are Not Present
            Here ................................................................ 16

        3.   The Settlement is Fair When Compared to the
            Strength of Plaintiff's Case, Ryder's Defenses,
            the Risks Involved in Further Litigation and
            Maintaining Class Status Throughout the Litigation,
            and the Amount Offered in Settlement ................... 17

            i.   *The Strength of Plaintiff's Case/Risks
                Involved in Further Litigation and Maintaining
                Class Status Throughout the Litigation* ......... 17

        4.   Sufficient Discovery and Investigation Has Occurred
            to Assess the Fairness of the Settlement ................ 25

        5.   Plaintiff's and Proposed Class Counsel Has
            Extensive Experience acting as Class Counsel

in Complex Class Action Cases ..................... 27

      6.   The Class' Response to the Settlement Evidences it is
One that is Fair and Reasonable ..................... 27

IV.   CONCLUSION ..................... 29

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                      <u>Page No.</u>

*Armenta v. Osmose, Inc.*
    (2005) 135 Cal.App.4th 314, 320                          22

*Bluetooth Headset Products Liability Litigation ("Bluetooth")*
    (9th Cir. 2011) 654 F.3d 935, 946                          16, 17

*Brinker Restaurant Corp. v. Superior Court*
    (2012) 53 Cal.4th 1004, 1040                          18, 20, 21, 27

*Cardinas v. McLane Foodservices, Inc.*
    (C.D. Cal. 2011) 796 F.Supp.2d 1246, 1252                          22

*Dilts v. Penske Logistics LLC*
    (S.D. Cal. 2011) 819 F.Supp.2d 1109                          19, 20, 21

*Glass v. UBS Fin. Servs.*
    (N.D. Cal. 2007) 2007 U.S. Dist. LEXIS 8476                          28

*Gonzalez v. Downtown LA Motors, LP*
    (2013) 215 Cal.App.4th 36, 49                          22

*Hanlon v. Chrysler Corp.*
    (9th Cir. 2003) 150 F.3d 1011, 1026                          15, 18

*Henry Carranza, on behalf of himself and all other
similarly situated v. Scully Distribution Services, Inc. et al.*
    San Bernardino Superior Court Case No. CIVDS 1017646)                          8

*Jenson v. Continental Finance Corp.*
    (8th Cir. 1979) 591 F. 2d 477, 482                          28

*John Rodriguez, et al. v. Ryder System, Inc. et al.*
    Los Angeles Superior Court Case No. BC456322                          8

*Linney v. Cellular Alaska P'ship*
    (9th Cir. 1998)                          26

*Mandujano v. Basic Vegetable Products, Inc.*
    (9th Cir. 1976) 541 F. 2d 832, 837                          27

*Marshall v. Holiday Magic, Inc.*
    (9th Cir. 1977) 550 F.2d 1173                          18

*Mayfield v. Barr*
    (D.C. Cir. 1993) 300 U.S. App. D.C. 31                          28

*Officers for Justice v. Civil Serv. Comm'n of the
City and Cnty. of San Francisco*
    (9th Cir. 1982) 688 F.2d 615, 625                          18

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Reinhardt v. Gemini Motor Transport*
    (E.D. Cal.2012) 869 F.Supp.2d 1158, 1168          22

*Telecomm. Corp. v. DirectTV*
    (C.D. Cal. 2004) 221 F.R.D. 523, 527           25

*Van Ba Ma v. Covidien Holding, Inc.*
    (C.D. Cal. 2014) 2014 U.S. Dist. LEXIS 76359    18

# I.
# INTRODUCTION

This is a wage and hour class action against Defendant Ryder Integrated Logistics, Inc. ("Ryder") in which Plaintiff, Javier Zamora, alleges that Ryder failed, among other things, to compensate for all hours worked at the statutory minimum, or agreed upon, rate, to pay overtime, and provide meal and rest periods. Plaintiff also asserts derivative California state law claims based on these alleged violations, including claims for failure to pay all wages due at termination, failure to provide accurate wage statements, and claims under the California Labor Code Private Attorneys General Act. All of these derivative claims depend on the strength of Plaintiff prevailing on his claims for meal and rest period violations and failure to compensate as described above.

It is requested the Court grant final approval of this Settlement, because after analyzing the strengths and vulnerabilities of the Class' claims along-side Defendant's potential liability exposure, this proposed settlement of $1,500,000, where the Class claimed 79% of the Net Settlement Amount, the average settlement share is $1,406, and the high settlement share is $4,955, is fair, reasonable and adequate.

# II.
# FACTUAL/PROCEDURAL BACKGROUND

This case involves California wage and hour claims against Defendant Ryder Integrated Logistics, Inc., ("Ryder"), a distribution company with facilities and

– 2 –

employees throughout California and beyond. The complaint was filed in California State Court by Plaintiff Javier Zamora – a former employee/driver of Ryder who received piece-rate compensation - on behalf of himself and other similarly situated current and former drivers. The essential focus of the matter is about Plaintiff's claims – and Ryder's defenses thereto - that Ryder's piece-rate pay structures do not compensate Plaintiff and the putative class of current and former drivers for all hours worked, which Plaintiff contends – and Ryder denies – violates California law. In addition, the main issues are about Plaintiff's claims – and Ryder's defenses thereto - that Ryder has uniform policies and practices that deny Plaintiff and the putative class of current and former drivers meal and rest periods under California law. Turley Decl. ¶ 4.

## A. Procedural Background

Plaintiff Javier Zamora is a former driver for Ryder who received piece-rate compensation and whose employment with Ryder terminated some time in 2013. On September 27, 2013, Plaintiff filed the initial class action complaint in San Diego Superior Court on behalf of "all individuals Ryder Integrated Logistics, Inc. has employed as non-exempt Distribution Drivers in California at any time during the period of the relevant statute of limitations." In the complaint, Plaintiff brought causes of action for: 1) failure to pay all wages for work performed at the statutory minimum, agreed upon rate, or otherwise (Cal. Lab. Code § 1194); 2) violations of

– 3 –

California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*; 3) failure to pay overtime; 4) failure to provide meal periods or compensation in lieu thereof; 5) failure to provide rest periods or compensation in lieu thereof; 6) Failure to comply with itemized employee wage statement provisions; and 7) waiting time penalties. Turley Decl. ¶5.

On September 27, 2013, Plaintiff sent a letter to the California Labor and Workforce Development Agency ("LWDA") pursuant to Labor Code Section 2699.3(1). October 29, 2013, Plaintiff served discovery on Ryder, which consisted of 66 demands for production of documents, 82 interrogatories, and deposition notices for the persons most qualified and custodian of records to testify. On November 7, 2013, Ryder answered the complaint, denying generally each and every allegation and each purported cause of action. On that same date, Ryder also removed the matter to the Southern District on Class Action Fairness Act grounds. Turley Decl. ¶6.

Shortly after answering and removing, the parties met and conferred and agreed to attend an early mediation of the matter. As part of this agreement, the parties stipulated to, and requested the Court grant, the matter being stayed until the completion of the mediation. On December 4, 2013, the Court granted this joint motion, staying the matter until April 17, 2014, which was two weeks after the parties were scheduled to attend a mediation of the matter with highly regarded California wage and hour mediator, Mark Rudy. Due to scheduling conflicts, the mediation was

Memorandum of Points & Authorities in Support of Unopposed Motion For Final
Approval of Class Action Settlement

rescheduled to take place on May 12, 2014, and, per the parties' stipulation, the Court graciously extended the stay to May 27, 2014. Turley Decl. ¶7.

### B. Discovery, Investigation, Claims and Defenses Associated with Ryder's Piece-Rate Pay Structures

Although the Complaint was pleaded on behalf of all non-exempt drivers employed by Ryder during the class period, Plaintiff Javier Zamora was paid on a piece-rate basis. The main thrust of Plaintiff's class-wide theories of liability against Ryder focused on Ryder's piece-rate pay structures failing to separately compensate for all hours worked. In this sense, the initial complaint was broader than the class of drivers Plaintiff Zamora sought to represent, as, per the initial complaint's class definition, it would have included hourly employees, which, again, Mr. Zamora was not.[1] Thus, Plaintiff's discovery requests were directed at discovering class-wide information and documents relating to Ryder's piece-rate drivers and relevant wage and hour policies related thereto. Turley Decl. ¶8.

Prior to the matter being removed to this Court, Plaintiff propounded interrogatories and demands for production of documents aimed at discovering the above information. Because of the removal, Ryder did not formally respond to the discovery requests. In advance of mediation, however, Ryder provided Plaintiff with an informal production of information and documents that were largely responsive to

---

[1]  The First Amended Complaint, which was filed on August 29, 2014, amends the class definition to reflect the fact that the class is narrower than pleaded in the original complaint and is only applicable to drivers who were paid piece rate compensation during the class period.

– 5 –

the discovery requests Plaintiff had previously propounded. In particular, Defendant provided Plaintiff with information and documents relating to the size and scope of the class, piece-rate pay structures applicable to the class during the class period, relevant wage and hour policies pertaining to Ryder's California piece-rate drivers, payroll details, route details, total work-weeks Ryder's California piece-rate drivers worked in the class period, and time and wage records, a production which included thousands of documents. As part of its production, Defendant provided information about thirty-four (34) different piece-rate pay structures that were applicable to the putative class of drivers at any given time during the class period. Turley Decl. ¶9.

After detailed analysis of its pay structures and mass meetings and interviews with class members of Ryder's California piece-rate drivers, Plaintiff contends – and Defendant vigorously disputes – that the piece-rate pay structures do not separately compensate Plaintiff and the class for all hours worked. Defendant contends the opposite and argues that, based on the 34 pay structures, the claims are not amenable to class treatment. Turley Decl. ¶24.

Likewise, per document analysis and class member interviews, Plaintiff contends – and Defendant vigorously disputes - that Defendant's rest and meal period policies applicable to piece-rate paid drivers during the class period do not comply with California law. Turley Decl. ¶25.

Plaintiff contends that Defendant's piece-rate structures do not provide for a

Memorandum of Points & Authorities in Support of Unopposed Motion For Final Approval of Class Action Settlement

paid 10-minute rest period and thus violate California law. Defendant wholly disputes Plaintiff's claims and contends the 10-minute rest period is compensated in the piece-rate structure and is factored in when deciding the particular piece-rate. Turley Decl. ¶26.

Plaintiff also contends that Defendant does not provide meal and rest periods to its piece-rate drivers in the amount and in the timeframes California law requires. Defendant contends it has an elaborate and documented policy and practice of ensuring Plaintiff and its California piece-rate compensated drivers have the opportunity to take meal and rest periods. Defendant secondarily relies on its arguments that Plaintiff's meal and rest period claims will be found to be preempted under the Federal Aviation Authorization Administration Act ("FAAAA").  Turley Decl. ¶27.

While the above discussion concerns several of Plaintiff's claims and theories of recovery asserted in this litigation and Defendant's defenses to the same, it is not intended to be a comprehensive analysis of every claim, factual predicate or theory in the case.  Each and every claim arising out of the action filed was considered in the context of the litigation and was the subject of discussion and negotiation and taken into consideration in reaching the agreement to settle the matter on the terms set forth in the Settlement Agreement.  The claims specifically addressed herein, relate only to those claims that Plaintiff considered to be their strongest claims.

**C. Prior Settled Case – *"Carranza/Rodriguez Class Action Settlement"* – and Its Effect on the Claims and Claims Period in this Matter**

Before mediation, Defendant also provided Plaintiff with information and documents about a prior related case that settled the same claims being made here during the class period. Specifically, on July 9, 2012, the San Bernardino Superior Court granted final approval of and entered judgment in a class action settlement in a case entitled *John Rodriguez, et al. v. Ryder System, Inc. et al.,* Los Angeles Superior Court Case No. BC456322 (consolidated action with *Henry Carranza, on behalf of himself and all other similarly situated v. Scully Distribution Services, Inc. et al.*, San Bernardino Superior Court Case No. CIVDS 1017646) ("Carranza/Rodriguez Class Action Settlement Agreement"). The Carranza and Rodriguez Complaints include claims for: (1) failure to pay statutorily mandated overtime wages at regular rate; (2) Failure to provide adequate meal periods or proper compensation in lieu thereof; (3) failure to provide rest periods or proper compensation in lieu thereof; (4) failure to furnish accurate itemized wage statements; (5) failure to keep accurate payroll records; (6) waiting time penalties; and (7) penalties under California Labor Code Private Attorneys General Act (PAGA). Turley Decl. ¶28.

The Final Approval Order and Judgment in the Carranza/Rodriguez consolidated matter certified a class of current and former employees of Ryder who worked in California as a driver at any time from December 28, 2006 through February 6, 2012, and ordered that the terms of the Settlement Agreement and Final

– 8 –

Order "are binding on the…Plaintiff Class Members …and that those terms have res judicata and other preclusive effect in all pending and future claims, lawsuits or other proceedings…" Accordingly, Defendant contended that the Carranza/Rodriguez Settlement Class Members (who did not timely opt-out) released all of their claims in this Action which accrued prior to February 6, 2012, and, on the basis of res judicata, there could be no liability for those individuals for workweeks that predated February 6, 2012. In other words, Defendant argued the Carranza/Rodriguez settlement and final approval order/judgment meant claims for a significant population of putative class members could not go all the way back to September 27, 2009, as Plaintiff's complaint alleged. Turley Decl. ¶29.

Thus, because of the settlement in the Carranza/Rodriguez matter, settlement discussions here had to be limited to a class defined as "all persons currently or formerly employed by Ryder as drivers in California who received any piece-rate compensation at any time between September 27, 2009, and the date of preliminary approval (08/28/14), except that the class definition shall not include drivers who terminated their employment prior to February 7, 2012 and are bound by the Carranza/Rodriguez Settlement Agreement." Turley Decl. ¶30.[2]

---

[2]    This class definition is significantly more limited than the all-encompassing all driver definition contained in the initial complaint. As explained earlier, the initial complaint's class description captured all of Ryder's employees, which would include drivers paid on a purely hourly basis as well as drivers earning piece-rate compensation. The amended class definition that was ultimately pleaded in the first amended complaint limits the scope of the class considerably. Not only does it place

– 9 –

### D. Mediation with Mark Rudy

After thorough legal and factual investigation, class representative and class member interviews and meetings, case and mediation strategies, counsel meetings, meet and confers, document, policy, and California route analysis, damage calculations and class-wide extrapolations arrived at from voluminous informal discovery Ryder provided, the parties attended a mediation with respected, California wage and hour mediator, Mark Rudy. At the end of the full day mediation, during which the negotiations were at arms-length and adversarial, with each side vigorously advocating their respective positions, the parties were able to come to general terms on a settlement, which was memorialized into a Memorandum of Understanding ("MOU"), and, later, into the more detailed Stipulation and Settlement Agreement ("Settlement Agreement") that is Attached to the Turley Declaration as **Exhibit 1.** Turley Decl. ¶31.

### E. Summary of Settlement Terms and Provisions

As stated in the Settlement Agreement, which, again is attached to the Declaration of William Turley as **Exhibit 1** – and subject to the Court's approval – the parties agreed to settle this action for the gross settlement amount of $1,500,000.From the Gross Settlement Amount, the following shall be taken out subject to the Court's

limits on the time period to account for the previous settlement; it limits the class definition to those class members who received piece-rate pay.

Memorandum of Points & Authorities in Support of Unopposed Motion For Final Approval of Class Action Settlement

approval, (1) the Class Representative Payment to Zamora in an amount up to $5,000, for prosecution of the Action, risks undertaken for the payment of attorneys' fees and costs, and a general release of all claims;  (2) the Settlement Administration Costs to the Settlement Administrator, Rust Consulting, Inc., estimated not to exceed $25,000; (3) a payment of $7,500 to the California Labor Workforce Development Agency ("LWDA"); (4) the employer portion of payroll taxes (including the employer's payment of applicable FICA, FUTA, and SDI contributions, etc.) to appropriate local, state and federal taxing authorities, which the claims administrator has estimated at $96,834.77; and (5) Class Counsel Fees Payment in an amount up to $375,000 (25% of the Gross Settlement Amount) for attorneys' fees and Class Counsel Litigation Expenses Payment in an amount up to $12,351.20 for litigation costs.  All of these payments are subject to court approval. Turley Decl. ¶32.

After the above amounts are subtracted from the Gross Settlement Amount, the remaining portion of the Gross Settlement Amount - referred to as Net Settlement Amount in the Settlement Agreement – shall be available for distribution to Participating Class Members on a claims made basis. After subtracting the above amounts, the Net Settlement Amount available for class settlement shares is approximately $978,314.03. Turley Decl. ¶33.

In the event that less than sixty percent (60%) of the Net Settlement Amount is claimed by Class Members, the remainder of the sixty percent (60%) of the Net

Settlement Amount shall be paid out to Participating Class Members; thus guaranteeing that a minimum of sixty percent (60%) of the Net Settlement Amount shall be paid to the Participating Class Members. This provision has been referred to in the Settlement Agreement – and shall be referred to herein – as "Guaranteed Amount," "Floor" or "60% Floor." Turley Decl. ¶34.

The proposed Settlement Agreement defines the settlement class to include "all persons currently or formerly employed by Ryder as drivers in California who received any piece-rate compensation at any time between September 27, 2009 and the date of preliminary approval (08/28/14), except that the class definition shall not include drivers who terminated their employment prior to February 7, 2012, and are bound by the Carranza/Rodriguez Settlement Agreement." Turley Decl. ¶35.

The amount allocated for each individual Participating Class Member will be determined by multiplying the number of Qualifying Workweeks worked by each Participating Class Member who submits a valid and timely claim form by the Workweek Value. Any unclaimed portion of the Net Settlement Amount will be retained by Ryder, subject to the 60% Floor described above. Turley Decl. ¶36.

As the following shows, the settlement has been a resounding success, with **79% of the Net Settlement Amount being claimed and the average and high Settlement Shares being $1,406 and $4,955, respectively.** See Stacy Roe ("Roe Decl.") ¶12. The settlement shares to class members herein further demonstrate the

– 12 –

settlement being fair, reasonable and adequate.

**F. Class Reaction to the Settlement – 79% of the Net Settlement Amount Being Claimed and the Average and High Settlement Shares Being $1,406 and $4,955, Respectively**

Pursuant to the Order Preliminarily Approving the Class Action Settlement, the Claims Administrator, Rust Consulting, Inc., mailed out 939 Court approved Notices Packets (which consisted of Class Notice, Claim Form, and Change of Address Form) to the Class on October 2, 2014. Per the Court's Order, the Class had forty-five days from the date the packets were mailed – or until November 17, 2014 - to have their claim forms, opt-out requests, or objections post-marked to Rust Consulting, Inc. Turley Decl. ¶37; Roe Decl. ¶¶9-10).

Of the 939 Class Notice Packets that were mailed out to the Class, 545 claim forms were received, which claimed 79 percent of the Net Settlement Fund – an amount far exceeding the 60% floor. The average settlement share is $1,406, and the highest payout at $4,955. In addition, there was only a single opt-out of the settlement class, and there were no objections from class members.[3] For the following reasons, it is respectfully requested the Court grant final approval of the settlement. Turley Decl.

---

[3] Per the Settlement Agreement and Notice, Class Members who request to be excluded from or opt out of the settlement are not part of the settlement class and will not be bound by the settlement's terms. Here the parties and Court are faced with the paradoxical situation where the only person to opt-out of the settlement (Francisco Martinez) is the same person who objected to it. By requesting to opt-out of the settlement, however, Mr. Martinez is not a settlement class member and thus has no standing to object to the settlement. As the Notice and Settlement Agreement clearly state, The Settlement and the Court's orders thereon shall have no effect whatsoever on any claims he may have against Ryder.

– 13 –

¶37; Roe Decl. ¶12).

### G. This Settlement Does Not Include Workweeks Where Ryder Drivers Worked Exclusively on an Hourly Basis

This settlement does not preclude drivers from receiving future compensation for wage and hour violations if the Ryder driver worked exclusively on an hourly basis during any particular workweek.

This settlement class consists of Ryder drivers that worked on a piece-rate basis. The Stipulation presented to the court specifically states the release shall only apply to those workweeks in which a class member received any piece rate compensation. Stated differently, this settlement only settles work weeks during which the Ryder driver worked on a piece-rate basis during any shift during that respective work week.

Thus, if the driver worked any workweeks for Ryder during which the driver only worked on an hourly basis, then those work weeks are not being settled as part of this settlement. In this instance, this settlement and/or Final Approval does not preclude these drivers from receiving future compensation for wage and hour violations arising from those workweeks where the driver worked only on an hourly basis.

Conversely, because this settlement is based upon a work-week basis, for any workweeks which the driver worked any shifts on a piece-rate basis, then the entire workweek is being settled as part of this settlement.

– 14 –

# III.
# DISCUSSION

## A. The Proposed Settlement Meets the Standards Governing Final Approval

Matters that have been filed as Class actions require court approval before a settlement can be consummated. See. Fed. R. Civ. Proc. ("FRCP") 23(e). Approval of a class action settlement involves a two-step process.

In determining whether to grant final approval of the settlement, the court examines the terms for overall fairness and, in so doing, balances the following factors:  the strength of the plaintiff's case; the risk, expense, complexity and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed; the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; the reaction of the class members to the proposed settlement. *Hanlon v. Chrysler Corp.* (9th Cir. 2003) 150 F.3d 1011, 1026.

Here, the proposed settlement was reached only after undertaking a robust factual and legal investigation into Defendant's pay structures, wage and hour policies, and route details, which culminated in the parties reaching an agreement to settle at an arm's length mediation. The settlement amount takes into consideration the significant risks with regard to the certifiability of Plaintiff's claims as well as

– 15 –

difficulties associated with prevailing on the merits. In light of these risks, the settlement amount is well within the ballpark of reasonableness. Turley Decl. ¶38.

### 1. The Settlement Was Reached as a Result of Arm's-Length Negotiations

The proposed Settlement was reached as a result of arm's-length negotiations that took place at and after mediation. Though cordial and professional, the settlement negotiations were, at all times, adversarial and non-collusive in nature. Following the mediation at which a Memorandum of Understanding was reached on settlement, the parties continued to negotiate at arm's length until the settlement was reached and conformed into the Stipulation of Settlement and Release Agreement that is filed concurrently herewith as **Exhibit 1** to the William Turley Declaration. Turley Decl. ¶39.

### 2. *In re Bluetooth Headset Products Liability Litigation* (9th Cir. 2011) 654 F.3d 935, Factors Are Not Present Here

In *Bluetooth,* the Ninth Circuit articulated additional factors that need to be considered, especially where a settlement has been reached prior to formal class certification. *In re Bluetooth Headset Products Liability Litigation ("Bluetooth")* (9th Cir. 2011) 654 F.3d 935, 946. As such, settlement agreements reached prior to class certification must withstand a higher level of scrutiny for signs of collusion or other conflicts of interest than ordinarily required under Rule 23(e). The three signs *Bluetooth* instructs trial court's to look for are:

– 16 –

1. When class counsel receives a disproportionate distribution of the settlement, or when the class receives no monetary distribution but counsel is amply rewarded;
2. When the parties negotiate a 'clear sailing' arrangement providing for the payment of attorney's fees separate and apart from class funds without objection by defendant;
3. When the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund. *Id* at 947.

This Settlement passes the *Bluetooth* test. The Net Settlement Amount is nearly three times larger than the fees requested by Class Counsel, and the amount of the Net Settlement Fund claimed by the Class (79%) is twice as much as the fees Class Counsel is requesting, which is the accepted federal benchmark of 25% of the Gross Settlement Amount. Additionally, although the settlement agreement states that Defendant will not object to attorney fees up to 25% of the Gross Settlement Amount, any amount not awarded by the Court will be added to the Net Settlement Amount for proportional distribution to the Class and will not revert to Ryder. Accordingly, unlike the settlement agreement in *Bluetooth,* the instant Settlement cannot be said to arouse suspicion of collusion.

**3. The Settlement is Fair When Compared to the Strength of Plaintiff's Case, Ryder's Defenses, the Risks Involved in Further Litigation and Maintaining Class Status Throughout the Litigation, and the Amount Offered in Settlement**

**i. *The Strength of Plaintiff's Case/Risks Involved in Further Litigation and Maintaining Class Status Throughout the Litigation***

When evaluating the settlement terms for purposes of ruling on whether to

– 17 –

finally approve it, the Court is to review the strength of the plaintiff's case, including "the probable outcome of a trial on the merits of liability and damages as to the claims, issues, or defenses of the class and individual class members." *Van Ba Ma v. Covidien Holding, Inc.* (C.D. Cal. 2014) 2014 U.S. Dist. LEXIS 76359, *6-7, citing *Marshall v. Holiday Magic, Inc.* (9th Cir. 1977) 550 F.2d 1173. In ruling on final approval, the "fairness hearing is not to be turned into a trial or a rehearsal for trial on the merits." *Id.* quoting *Officers for Justice v. Civil Serv. Comm'n of the City and Cnty. of San Francisco,* (9th Cir. 1982) 688 F.2d 615, 625. Rather, when considering the fairness of a proposed class settlement, courts consider the strength of the plaintiff's case against the risk, expense, complexity and likely duration of further litigation. *Hanlon, supra,* 150 F.3d at 1026.

The liability questions in this case touched on a wide expanse of California's wage and hour laws, many of which are subject to an ever changing legal landscape, as appellate cases continually issue and refine the analysis. For instance, Plaintiffs' claims challenged Defendant's policies and pay-structures with respect to its piece-rate pay formulas, an area of law that is the subject of frequent refinement through a myriad of appellate decisions. The law governing Plaintiffs' meal and rest period class claims is equally, if not, more in flux due to the Supreme Court's recent decision in *Brinker v. Superior Court* and the voluminous progeny of appellate cases spawned in its wake. Just from a legal standpoint, Plaintiffs' liability claims demanded vigilance

to the ever changing legal landscape and an expertise on how the evolving case law interacted with the issues and causes herein.  Turley Decl. ¶40.

In addition to the substantive liability law, Plaintiffs' claims also touched on and possibly implicated Federal laws, which invoked preemption principles into the center of the litigation.  For instance, Defendant claims Plaintiffs' overtime claims implicated the Federal Motor Carrier Exemption of the FLSA, which is expressly adopted by California Wage Order No. 9-2001. Under the Federal Motor Carrier Exemption, Defendant claimed Plaintiffs and the Class were exempt from California or Federal Overtime requirements. Defendants' also argued that Plaintiffs' meal and rest period claims were preempted under the Federal Aviation Authorization Administration Act (FAAAA). Both of these preemption claims required considerable analysis and negotiations around a wide array of federal and state cases dealing with the same issues. Turley Decl. ¶41.

As this case was pending, so, too, was the appeal of the Southern District's grant of summary judgment to Defendant in *Dilts v. Penske Logistics LLC* (S.D. Cal. 2011) 819 F.Supp.2d 1109, wherein the court found the FAAAA preempted and thus called for dismissal of the plaintiffs' claims for violations of California's meal and rest period laws. On July 29, 2014, the Ninth Circuit reversed the District Court's decision, finding the FAAAA did not so preempt. See *Dilts v. Penske Logistics, LLC* (9th Cir. 2014) 757 F.3d 1078, 1081 (this decision was later withdrawn and substituted

– 19 –

by *Dilts v. Penske Logistics,* [9[th] Cir. 2014] U.S. App. LEXIS 17476, which held the same as the July 29, 2014 opinion.). Turley Decl. ¶42.

Despite the Ninth Circuit's opinion in *Dilts*, wage and hour litigants continue to believe the issue of preemption has not been resolved and courts are considering motions to stay wage and hour class actions pending exhaustion of further appellate review of the decision. See, for example, a recent motion to stay filed by the defendant in a wage and hour class action in which Class Counsel here represents the plaintiff, attached to the Turley Decl. as **Exhibit 2.** Thus, despite the ruling in *Dilts*, there is the possibility that Certriori will be granted from the U.S. Supreme Court and the issue of FAAAA preemption will again be in flux until the High Court has its say. Turley Decl. ¶43.

The preemption issue, however, only presented the first hurdle to Plaintiff's meal and rest period claims. Defendant presented a considerable factual defense on which it primarily relied on in defending the meal and rest period claims. A defense that was made all the more formidable under the California Supreme Court's elucidation of the workplace flexibility that is built into the obligation to provide meal and rest periods. Turley Decl. ¶44.

In 2012, the California Supreme Court decision in *Brinker Restaurant Corp. v. Superior Court* determined the nature and scope of an employer's obligation to provide meal and rest periods. The Court repeatedly noted that the meal and rest

period laws were not draconian, but were grounded in notions of flexibility to both the employer and the employee. To that end, the Court reasoned that "what will suffice [for providing meal and rest periods] may vary from industry to industry, and we cannot in the context of this class certification proceeding delineate the full range of approaches that in each instance might be sufficient to satisfy the law." *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1040. The Court further noted that "the employer is not obligated to police meal breaks and ensure no work thereafter is performed." *Id.* at 1041. Turley Decl. ¶45.

Ryder's meal and rest period policies Plaintiff challenged tended to reflect the open and flexible principles outlined in *Brinker*. In this regard, evidence showed Ryder hired an industrial engineer to design routes to ensure the drivers had sufficient time and space to take meal and rest periods. Consistent with the spirit of *Brinker*, Ryder did not "police" its employees to ensure they were taking meal and rest periods, but left it up to the drivers to schedule them. Finally, for each shift, Ryder presented evidence that drivers signed acknowledgments stating they had taken their meal and rest periods. Altogether, this evidence presented a meal and rest period policy that tended to share a visceral connection with *Brinker's* expansive principles underlying the duty to provide meal and rest periods. Turley Decl. ¶46.

Thus, the favorable decision in *Dilts* reflected a largely insignificant factor in determining the value of Plaintiff's meal and rest period claims, as it did nothing to

– 21 –

move the factual mountain Plaintiff would have to get over to prevail on the claims. Turley Decl. ¶47.

Plaintiff's claims for unpaid time pursuant to Defendant's piece-rate pay system faced similar difficulties. Turley Decl. ¶48.

The central dispute in this claim is, as Plaintiff contends, Defendant's piece-rate pay structures do not compensate Plaintiff and the class for all hours worked.[4] Defendant disputes these claims on both merit and class certification based grounds. Turley Decl. ¶49.

Significantly adding to the complexity of the matter was the fact that the driver class was not subject to one – *or even a handful* – of piece-rate pay structures. In other words, they were not all paid the same way or under the same formula. Instead, Ryder presented evidence of 34 different pay structures that applied to the class members during the class period. For instance, under some accounts, drivers are paid a flat rate for the load, or the trip, others are paid by the loads and stops, or via a combination of different variables. To complicate matters more, the drivers were not covered exclusively under certain of the multiple pay structures. Rather, the pay structure a driver would be paid under on any given day would depend on the account being

---

[4] Plaintiff bases this contention on the following cases, which Plaintiff contends stands for the proposition that a piece-rate compensation pay system that does not separately compensate for all time worked does not comply with California minimum wage law: *Cardinas v. McLane Foodservices, Inc.* (C.D. Cal. 2011) 796 F.Supp.2d 1246, 1252; See also, *Gonzalez v. Downtown LA Motors, LP* (2013) 215 Cal.App.4th 36, 49; *Armenta v. Osmose, Inc.* (2005) 135 Cal.App.4th 314, 320; *Reinhardt v. Gemini Motor Transport* (E.D. Cal.2012) 869 F.Supp.2d 1158, 1168.

– 22 –

serviced. This meant, drivers could and would be paid under different wage structures in the same day and week. Turley Decl. ¶50.

Ryder certainly relied on the 34 different pay structures and the fact that most individual drivers were covered under multiple different pay structures to defeat certification and, if needed, liability. If it were not for the skill, sophistication, and resolve of Class Counsel, these 34 different pay structures could very well have splintered the matter into a series of mini-trials and individualized issues that would have destroyed certification and, if not, fatally confused the merits issues relating to liability. Turley Decl. ¶51.

In the end, this matter encompassed nearly every important area of California wage and hour law and required an understanding of how those laws interact and co-exist with Federal counterparts. The claims have different triggering facts and, as shown above, tended to stem from divergent factual predicates, which presented a major hurdle for Class Counsel to get over.[5] Turley Decl. ¶52.

In its Removal papers, Ryder calculated its potential and combined exposure for meal period and rest period violations to be $4,399,380. Ryder's removal papers calculated its potential exposure to plaintiff's claims for failing to compensate for all hours worked at the statutory minimum wage at $917,640. Thus, Ryder estimated its

---

[5]

Memorandum of Points & Authorities in Support of Unopposed Motion For Final Approval of Class Action Settlement

total estimated potential exposure for meal and rest periods and failure to compensate claims at $5,317,020. Turley Decl. ¶53.

Based on the records related to workweeks during the class period, wage and time records, and communications from Plaintiff and many putative Ryder drivers throughout the state as to the tasks they perform for which they feel they are not compensated, Plaintiff's exposure calculations for these claims at the time of mediation were similar to Ryder's removal estimations. Turley Decl. ¶54.

In preparation for mediation, Ryder provided information relating to, among other things, the total qualifying workweeks from September 27, 2009, to March 28, 2014. That is, the total work weeks all class members worked, excluding those weeks released under the Carranza/Rodriguez settlement, from September 27, 2009, to March 28, 2014. Per that data, the 900 class members worked an approximate total of 34,903 qualifying workweeks, or approximately 174,515 workdays.  Turley Decl. ¶55.

Defendant also provided data from which Plaintiff could calculate an average hourly rate. From that data, Plaintiff estimated the average hourly rate to be $19.52/hour, which Defendant vigorously contests.  Turley Decl. ¶56.

From Plaintiff's interviews of drivers, Plaintiff averaged that drivers worked an average of .667 hours per day performing pre and post trip inspections on their trucks for which they claim they claim, under 33 of the 34, or 97% of the pay structures, they were not compensated. Plaintiff thus calculated exposure for pre and post trips as

follows: .667 hrs/dayx$19.52/hr x 174,515 days x .97 = $2,203,992. Defendant

vigorously denies these calculations in all aspects and, for reasons explained herein,

on all liability premises on which Plaintiff bases them.  Turley Decl. ¶57

Calculating one rest period violation and one meal period violation per day,

which, under California Labor Code section 226.7, Plaintiff claimed one hours' worth

of pay was owed for each violation, Plaintiff estimated the total exposure for meal and

rest period violations as follows: 2 x $19.52/hour x 174,515 days = $6,813,065.

Defendant vigorously denies these calculations in all aspects and, for reasons

explained herein, on all liability premises on which Plaintiff bases them. Turley Decl.

¶58.

Courts in the Ninth Circuit have observed that "a proposed settlement may be

acceptable even though it amounts to only a fraction of the potential recovery."

*Telecomm. Corp. v. DirectTV* (C.D. Cal. 2004) 221 F.R.D. 523, 527. The settlement

here is significantly more than a "fraction" when considered that it provides a definite

and significant recovery in light of the significant risks of further litigation.

Accordingly, the parties contend the proposed settlement is fair, reasonable, and

adequate in light of the strengths of Plaintiff's case, the risks of further litigation, and

the estimated values of Plaintiff's claims at trial.

### 4. Sufficient Discovery and Investigation Has Occurred to Assess the Fairness of the Settlement

In regards to class actions settlements, "as long as the parties have sufficient

– 25 –

information to make an informed decision about the settlement, 'formal discovery is not necessary to the bargaining table." *Williams, supra,* 2013 U.S. Dist. LEXIS at *13-14, quoting *Linney v. Cellular Alaska P'ship,* (9th Cir. 1998).

Although the parties did not technically engage in formal discovery and opted, instead, to have the matter stayed pending mediation efforts, substantial informal discovery was disclosed. As mentioned earlier herein, when the matter was still in California state court, Plaintiff propounded interrogatories and demands for production of documents, all of which were geared towards obtaining information, documents, and/or evidence relating to the size and scope of the class, driver pay structures, California routes, Defendant's wage and hour policies and procedures, time and wage records, workweeks during the class period, and number and size of California Ryder facilities. In other words, although informal under the Federal Rules of Civil Procedure, the information and documents produced were responsive to formal and wide-ranging discovery requests that Plaintiff propounded in the state court. Turley Decl. ¶58.

It was only after considerable time, effort, and skill was spent in evaluating the likelihood of getting the matter certified as a class action – and maintaining such status throughout the case – as well as the strength of Plaintiff's liability theory and extent and range of class recovery against the risks of not obtaining and maintaining class certification status, and the risks posed through the normal perils of litigation,

– 26 –

Memorandum of Points & Authorities in Support of Unopposed Motion For Final Approval of Class Action Settlement

including the affirmative defenses asserted by Defendant, the difficulties of complex litigation, the lengthy process of establishing specific damages, and various possible delays and appeals, that Plaintiff was able to agree to the proposed settlement reached at an arms-length mediation. Turley Decl. ¶59.

### 5.  Plaintiff's and Proposed Class Counsel Has Extensive Experience acting as Class Counsel in Complex Class Action Cases

As the declaration of William Turley attests, Plaintiff's and proposed class counsel's experience in complex class action matters is extensive. Indeed, Plaintiffs' counsel are class counsel in *Hohnbaum et al. v. Brinker Restaurant Corp et al.,* which is the subject case in the recent landmark decision of *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004. Turley Decl. ¶¶ 4-13; 60.

Plaintiffs' counsel has prosecuted numerous cases on behalf of employees for California Labor Code violations and thus are experienced and qualified to evaluate the class claims and to evaluate settlement versus trial on a fully informed basis, and to evaluate the viability of the defenses.  This experience instructed Plaintiffs' counsel on the risks and uncertainties of further litigation and guided their determination to endorse the proposed settlement. Turley Decl. ¶¶4-13; 60.

### 6.  The Class' Response to the Settlement Evidences it is One that is Fair and Reasonable

The Ninth Circuit has held that the number of class members who object to a proposed settlement is a factor to be considered. *Mandujano v. Basic Vegetable*

Memorandum of Points & Authorities in Support of Unopposed Motion For Final
Approval of Class Action Settlement

1   *Products, Inc.* (9th Cir. 1976) 541 F. 2d 832, 837. Here, not a single class member has

2   objected to the settlement. That is, not a single participating member of the class who

3   will be bound by the terms of the settlement and the release have chosen object to the

4   settlement. Instead, the same (and only) individual who opted out of the settlement has

5   objected to it. Thus, he stands outside the class and the settlement cannot be said to

6   have a single class member objecting to it. See *Glass v. UBS Fin. Servs.* (N.D. Cal.

7   2007) 2007 U.S. Dist. LEXIS 8476 (Finding the objector had no standing to object to

8   the settlement because he opted out of the settlement and was therefore no longer a

9   class member.); see also *Mayfield v. Barr* (D.C. Cir. 1993) 300 U.S. App. D.C. 31

10  (finding "[t]hose who are not class members, because they are outside the definition of

11  the class or have opted out" lack standing to object to the settlement.); *Jenson v.*

12  *Continental Finance Corp.* (8th Cir. 1979) 591 F. 2d 477, 482 ("Opt-outs…are not

13  members of the class and hence are not entitled to protection of [FRCP] No. 23[e]").

14  Accordingly, no class members objected to the settlement.[6]

15          Even if, however, the non-class member objector were to be considered an

16  objector, he would represent less than one percent of the 939 Class Members and

17  therefore not indicative of an unreasonable or unfair settlement.

18          In addition to the lack of objections, the Class' claims made response to the

---

[6] Plaintiff will address the merits of the Defendant's objection in a separate pleading. Suffice it to say and as the above shows, Defendant does not have standing to object to the settlement, as he is no longer a class member and thus is not bound by the terms of the Proposed Settlement Agreement. In that separate pleading, Plaintiff will also address the substance of the objections to show they have no merit.

Memorandum of Points & Authorities in Support of Unopposed Motion For Final
Approval of Class Action Settlement

settlement evidences its resounding endorsement of it. Again, the Class has claimed 79% of the Net Settlement Fund. There has been only one opt-out, who happens to be the same person who objected to the Settlement. (See Roe Decl. ¶12). This vigorous participation rate shows this is a settlement the class has warmly embraced.

### IV.
### CONCLUSION

In light of the foregoing, Plaintiff requests the Court find the Settlement fair, reasonable, and adequate and grant this Final Approval Motion.

Dated:  November 26, 2014                    THE TURLEY LAW FIRM, APLC


                                             By: /s William Turley
                                                 William Turley
                                                 David Mara
                                                 Attorneys for Plaintiff
                                                 JAVIER ZAMORA

Memorandum of Points & Authorities in Support of Unopposed Motion For Final Approval of Class Action Settlement